```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

SHARON K. POSTELL                *

        Plaintiff,           *

vs.                              *       CASE NO. 3:05-CV-73 (CDL)

GREENE COUNTY HOSPITAL           *
AUTHORITY, d/b/a MINNIE G.
BOSWELL MEMORIAL HOSPITAL,       *
PACER HEALTH MANAGEMENT
CORPORATION OF GEORGIA, INC.,    *
and ANITA BROWN, in her
Individual Capacity,             *

        Defendants.          *

## O R D E R

Presently pending before the Court are Defendants' motions for summary judgement (Docs. 54, 56) and Plaintiff's Motion for Partial Summary Judgment (Doc. 60). For the following reasons, Defendants' motions are granted and Plaintiff's motion is denied.

## BACKGROUND

The undisputed facts are as follows:

In June 2004 Pacer Health Management Corporation of Georgia entered into an agreement to purchase the Minnie G. Boswell Memorial Hospital from the Greene County Hospital Authority. In July 2005, Pacer Health Management acquired the Hospital.[1] During this time, Plaintiff, Sharon Postell, worked for the Hospital as a "PRN" status emergency room nurse. As a PRN nurse, Plaintiff was a "non-scheduled, as-needed basis only" employee who was "not guaranteed a

---

[1] Green County Hospital Authority and Pacer Health Management Corporation of Georgia will hereinafter be referred to collectively as the Hospital.

certain number of hours per workweek." (Reilly Dep. Ex. 7, Apr. 28, 2006.) Full-time nurses were given priority in the scheduling over PRN nurses. Therefore, Plaintiff was allowed to choose her shifts from those available after the full-time nurses had selected their shifts.

Although she was not guaranteed any particular shift, Plaintiff requested that she be scheduled to work at least two weekends a month at the Hospital. Plaintiff claims her supervisor, Director of Nursing Anita Brown, agreed to this request. At the end of July 2004, Plaintiff took a week off from the Hospital for her daughter's wedding. Before Plaintiff left for vacation, she signed up for shifts on the August/September 2004 work schedule. Plaintiff left for vacation believing that her next scheduled shift at the Hospital was on Tuesday, August 10, 2004.

While Plaintiff was on vacation, a PRN nurse, Starla Allen, agreed to switch her status to full-time. As a result, some of Plaintiff's shifts were taken from Plaintiff and given to Ms. Allen. (Pl.'s Dep. 168:16-170:6, Mar. 3, 2006.) On Monday, August 9, 2004, Plaintiff called the emergency department to verify her schedule. Plaintiff was told that she was no longer working on Tuesday, August 10, and was not scheduled to work until August 19. Plaintiff contacted Defendant Brown to ask why several of her shifts had been taken away. Defendant Brown told Plaintiff that (1) Plaintiff should not take any action to sign up for additional shifts until they discussed the schedule, and (2) they could talk about the shift changes when Plaintiff came to work on August 19.

After Plaintiff spoke to Defendant Brown, Plaintiff contacted Sally Boswell, the newly appointed manager of the emergency room, to

2

find out why she had been taken off the nursing schedule. Ms. Boswell had no information for the Plaintiff because Ms. Boswell had not yet taken responsibility for the emergency room scheduling. Plaintiff asked Ms. Boswell to talk to Defendant Brown to determine why Plaintiff was taken off the schedule and to ask Defendant Brown to put Plaintiff back on the schedule. When Ms. Boswell spoke to Defendant Brown, Defendant Brown told Ms. Boswell that she would speak to Plaintiff about the schedule during Plaintiff's next shift on August 19.

Between August 9 and August 19, Plaintiff also contacted Hospital physician and former chief of staff, Dr. William Rhodes. Plaintiff asked Dr. Rhodes if he knew why she "could no longer work in the emergency room." (Pl.'s Dep. 123:11-13.) Dr. Rhodes knew nothing of the emergency room schedule changes and told Plaintiff that he had no information for her. Dr. Rhodes told Defendant Brown that Plaintiff contacted him regarding her work schedule.

On August 19, during Plaintiff's shift, Defendant Brown asked to speak to Plaintiff in a private room about the schedule. At this meeting, Defendant Brown told Plaintiff that she was disappointed in Plaintiff because Plaintiff had gone "all over the hospital" causing trouble. (Pl.'s Dep. 131:2-12.) Defendant Brown also told Plaintiff that she believed Plaintiff had been insubordinate by calling Dr. Rhodes and Ms. Boswell, and that Plaintiff was not acting like she should have "as a Christian." (Pl.'s Dep. 126:24-25, 131:15-19.) Defendant Brown then handed Plaintiff two memoranda, instructed Plaintiff to read the memoranda, and explained that she would discuss the memoranda with Plaintiff at a later time. One of the memoranda given to Plaintiff was in the form of a letter and was dated

3

August 19, 2004 (hereinafter "August 19 letter"). The August 19 letter states:

> The following is for your eyes only; if you wish to share this with others it is your choice. I have no intentions of placing this in your personnel file or any permanent record. I have a copy on my computer only.
>
> In response to the incidents that have occurred in the past weeks. An explanation of my actions: I could have called you Friday prior to Wendy's wedding to inform you of the change in Starla's status, but I felt this would not be appropriate. I had full intentions of calling you Monday morning but pressing issues overshadowed my morning schedule. I was making my calls when you called Monday afternoon. Yes, this was short notice but it was more than the 2-4 hour notice that is typical when canceling a PRN employee. I was planning a meeting with you when I was informed you were placing calls to individuals regarding your schedule. Some people would perceive a call to Dr. Rhodes as a threat to their authority. I do not. When he informed me of the call I found it pathetic. This is an act of desperate person. The call to Sally was a [sic] different. I can see your side of the story. Sally is the Med/Surg and ED manager but she has had no time to acclimate to Med/Surg or the ED challenges let alone the staffing challenges. This would be perceived as a threat by some but I view it as a desperate act.
>
> Sharon you are a disappointment. You had an incredible opportunity to shine as a manager and most importantly as a Christian and you failed. I should have discussed this with you before now but I will utilize this opportunity to speak candidly with you. As fellow Christians we should speak openly and constructively.
>
> Your removal as manager of the ED was long overdue when Joel was hired. He stepped into a no win situation and you made even more unbearable by sabotaging the transition even after we discussed how I wanted it to be done. I envisioned a smooth transition. You two working together to make for a cohesive unit and a strong department. Instead, you dropped it (the job) in his lap and washed your hands. You were never openly insubordinate. You were passive aggressive, which is most disturbing of all. This is not the attributes of Christian behavior. Say what you mean and mean what you say. Let your yah be yah and your nay is nay. If you have a problem, speak with me directly. If you suspect I am lying to you, ask me.
>
> Your continued employment is your choice. I am not terminating you. My desire was to never terminate you. Sharon, I am not the enemy. You have created your own enemies.

(Pl.'s Dep. Ex. 3.) Defendant Brown did not give Plaintiff an opportunity to read the memoranda during the meeting, but informed Plaintiff that she was upset with Plaintiff and said that she wanted Plaintiff "out of the Hospital" and never wanted Plaintiff "to work [at the Hospital] again." (Pl.'s Dep. 132:15-18.) Finally, Defendant Brown told Plaintiff that Plaintiff had two more scheduled shifts, and she expected Plaintiff to work those shifts, but afterwards Plaintiff should never "set foot back in [the] [H]ospital." (Pl.'s Dep. 132:24-133:4.)

Plaintiff did not work her final two shifts. Instead, Plaintiff called in sick for her August 24 shift. On August 27, 2004, Plaintiff contacted Janice Reilly, the Hospital's human resources manager, about the August 19 meeting with Defendant Brown. Ms. Reilly instructed Plaintiff to make a written record of the August 19 meeting and send it to her. Ms. Reilly also asked Plaintiff if she would participate in a meeting with Defendant Brown and herself. Plaintiff agreed to participate in the meeting. On August 30, Plaintiff contacted Ms. Reilly and explained that she had changed her mind and no longer wished to participate in a meeting with Defendant Brown. Plaintiff told Ms. Reilly that she still intended to respond to Defendant Brown's memoranda and would be sending Ms. Reilly a letter.

Ms. Reilly received Plaintiff's letter on September 8, 2004. Ms. Reilly thereafter attempted to contact Plaintiff several times. Plaintiff and Ms. Reilly were unable to reach each other until September 24, 2004. During that conversation, Plaintiff informed Ms. Reilly that she had hired an attorney and would be sending the Hospital a letter. The Hospital received a letter from Plaintiff's

5

attorney around September 29, 2004. This letter demanded "compensation to remedy the financial, professional and emotional harm" that the Hospital's actions have caused Plaintiff. The letter also threatened that if the Hospital did not respond to Plaintiff by the close of business on October 5, 2004, Plaintiff would file the attached Equal Employment Opportunity Commission ("EEOC") complaint. (Reilly Dep. Ex. 9, 10.)

The Hospital failed to respond within Plaintiff's prescribed time. Plaintiff filed her EEOC complaint on October 6, 2004. On May 27, 2005, Plaintiff received a "Notice of Right to Sue" from the EEOC. Plaintiff then filed this cause of action on August 19, 2005 claiming religious discrimination. Specifically, Plaintiff claims Defendant Brown and the Hospital violated the First and Fourteenth Amendments of the United States Constitution by terminating Plaintiff because Plaintiff did not meet Defendant Brown's definition of a Christian. Additionally, Plaintiff claims the Hospital violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by discriminating against her because of her religious beliefs and by retaliating against Plaintiff for her complaints of religious discrimination. Defendants Brown and the Hospital bring motions for summary judgment on all of Plaintiff's claims. Plaintiff brings a Motion for Partial Summary Judgment on her claim of retaliation. The Court addresses all three motions in this Order.

DISCUSSION

## I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**II. Title VII Claims**

Title VII prohibits discrimination against an employee because of that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff claims that she was discriminated against because of her religion and that this discrimination is actionable under Title VII. First, Plaintiff contends that she was subjected to disparate treatment because of her religion and that this disparate treatment resulted in her

7

termination.  Second, Plaintiff claims that she was terminated in retaliation for her complaints of religious discrimination.

### A. Disparate Treatment

"A plaintiff may establish a claim through the introduction of direct evidence or circumstantial evidence that creates an inference of discrimination." *Carter v. Bowman*, 172 F. App'x 915, 917 (11th Cir. 2006) (citation omitted). "[D]irect evidence is evidence, which if believed proves [the] existence of [a] fact in issue without inference or presumption." *Richardson v. Dougherty County*, 185 F. App'x 785, 789 (11th Cir. 2006) (internal quotation marks and citations omitted) (alterations in original). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence." *Id.*

In order to bring a claim for disparate treatment based on circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff can support a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (2002). If the defendant carries this burden, the presumption of discrimination is rebutted. *Burdine*, 450 U.S. at 255. The plaintiff can then still defeat summary judgement by creating a jury

8

question as to whether the defendant's legitimate non-discriminatory reason is pretext for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

### *1. Direct Evidence*

Plaintiff claims that she has presented direct evidence of discrimination. First, Plaintiff claims the August 19, 2004 letter written by Defendant Brown is direct evidence of discrimination. Second, Plaintiff claims that Defendant Brown's statements in the August 19, 2004 meeting are direct evidence of discrimination. The Court finds that this evidence is not direct evidence but is circumstantial in nature.

Plaintiff points to the following statements by Defendant Brown as direct evidence of religious discrimination: (1) that Plaintiff is a disappointment; (2) that Plaintiff failed in her opportunity "to shine as a manager and most importantly as a Christian" (Pl.'s Dep. Ex. 3); (3) that Christians "should speak openly and constructively" (Pl.'s Dep. Ex. 3); and (4) that Plaintiff's behavior is not "Christian behavior." The Court finds that these statements are subject to more than one interpretation. It is incorrect to conclude their "intent could mean nothing other than to discriminate on the basis" that Plaintiff is or is not a Christian. *Richardson*, 185 F. App'x at 789. To conclude that Plaintiff's termination was based upon religion requires multiple inferences to be made from these remarks and statements. While these statements may constitute relevant circumstantial evidence, they certainly do not represent direct evidence of religious discrimination. Plaintiff's circumstantial evidence claim, therefore, must be evaluated under the *McDonnell Douglas* burden-shifting analysis.

9

### 2. Circumstantial Evidence

In order to establish a prima facie case of discrimination based upon religion Plaintiff must establish (1) that she is a member of a protected class, (2) that she was qualified for her job, (3) that she was subjected to an adverse employment action, and (4) that she was replaced by someone outside her protected class or was treated differently than similarly situated employees. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (2004); *Hawkins v. CECO Corp.*, 883 F.2d 977, 982 (11th Cir. 1989). It is undisputed that Plaintiff, as a Christian, is a member of a protected class. Additionally, construing the facts in the light most favorable to Plaintiff, the Court assumes for the purposes of this part of the analysis that Plaintiff was qualified for her position and that Plaintiff was terminated by Defendant Brown in the August 19, 2004 meeting. Therefore, the only remaining element Plaintiff must prove to establish a prima facie case of discrimination is that she was replaced by someone outside her protected group or was treated differently than similarly situated employees. *See Hawkins*, 883 F.2d at 982. Plaintiff has failed to carry this burden.

Plaintiff has produced no evidence that shows that she was replaced by someone outside her protected class. Moreover, she has produced no evidence that she was treated differently than similarly situated employees outside her protected class. She has failed to produce a single valid comparator. She attempts to compare herself with Defendant Brown, but she and Defendant Brown are clearly not "similarly situated in all relevant respects," *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno*,115 F.3d 1555, 1562 (11th Cir.1997)); nor were they

10

"involved in or accused of the same or similar conduct" and "disciplined in [a] different way[]." *Id.* Defendant Brown was the director of nursing. Plaintiff was a PRN nurse. They did not have "very similar job-related characteristics." *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). Plaintiff has also produced no evidence that they engaged in similar conduct and were treated differently. Simply put, the undisputed evidence establishes that Defendant Brown is not a proper comparator.

Since Plaintiff has failed to produce any evidence from which a reasonable jury could conclude that she was treated differently than a similarly situated person outside her protected class, Plaintiff cannot make out a prima facie case of religious discrimination.[2] The Hospital's Motion for Summary Judgment on Plaintiff's claim for disparate treatment is therefore granted.

**C. Retaliation**

Plaintiff also makes a claim under Title VII for retaliation. A plaintiff must first establish a prima facie case of retaliation. If a plaintiff establishes a prima facie case, the defendant then has the burden of articulating a legitimate non-discriminatory reason for the challenged action. The plaintiff can then defeat summary

---

[2]Even if Plaintiff had established a prima facie case of discrimination, she has failed to sufficiently rebut Defendant's legitimate non-discriminatory reason for Plaintiff's termination—conduct that Defendant Brown perceived at the time to be insubordination. The fact that Defendant Brown later realized that she may have overreacted to the situation does not prove that either (1) Defendant Brown did not believe that Plaintiff was insubordinate and passive aggressive or (2) that Defendant Brown's actions were a pretext for religious discrimination. *See, e.g., Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that the court is "not interested in whether [Defendants'] conclusion is a correct one, but whether it is an honest one.")

11

judgment by creating a question of fact as to whether the defendant's reason is merely pretext for discrimination. *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999).

In order to establish a prima facie case of retaliation, Plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that the adverse employment action is causally related to the protected activity. *Wideman v. Wal-mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Additionally, although Plaintiff need not prove that discrimination actually occurred to recover for retaliation, she "must have had a reasonable good faith belief that the discrimination existed." *Holifield*, 115 F.3d at 1566 (citation omitted). Plaintiff has failed to present evidence that shows that she suffered an adverse employment action that was causally related to a protected activity. Consequently, she has failed to establish a prima facie case of discrimination.

It is undisputed that on August 27, 2004, Plaintiff contacted the Hospital's manager of human resources, Janice Reilly, to complain that Defendant Brown had discriminated against Plaintiff because of Plaintiff's religion. Plaintiff, however, has failed to show that *after* this complaint, she suffered an adverse employment action or that any action against her was causally related to her complaint. Plaintiff argues that she was subjected to an adverse employment action because (1) Plaintiff was not returned to the work schedule after August 19, and (2) after Plaintiff hired an attorney, the Hospital told Defendant Brown not to communicate with Plaintiff in any way. Thus, Plaintiff argues, the Hospital purposefully prevented Defendant Brown from returning Plaintiff to the schedule.

12

Plaintiff's convoluted argument jumps from one statutorily protected activity to another—first, Plaintiff's complaining to Ms. Reilly and second Plaintiff's retaining legal counsel. Plaintiff's argument also assumes that Plaintiff was not terminated on August 19 and that the Hospital had some kind of duty to ensure that Plaintiff was put back on the schedule.

In sum, Plaintiff's retaliation claim is completely baseless. No action was taken against Plaintiff after August 19, 2004, yet both of her alleged statutorily protected activities occurred after August 19, 2004. The evidence shows that Plaintiff did not complain about discrimination until August 27, 2004. At that time she had already been fired and/or taken off the emergency room schedule.[3] In her August 29, 2004 letter to the Hospital, Plaintiff explained that she wanted to participate in a meeting with Ms. Reilly and Defendant Brown in order to determine why she had been "terminated behind closed doors." (Pl.'s Dep. Ex. 5.) After writing this letter, however, Plaintiff decided that she did not want to participate in the requested meeting. Plaintiff contacted Ms. Reilly and explained that she was not going to participate in a meeting, but was sending the aforementioned letter to Ms. Reilly.

Ms. Reilly received Plaintiff's letter on September 8, 2004. For the following two and a half weeks, Ms. Reilly and Plaintiff were unable to get in contact with each other despite repeated phone calls and voice messages. When Plaintiff and Ms. Reilly finally spoke on September 24, 2004, Plaintiff informed Ms. Reilly that Plaintiff had retained legal counsel and was going to send the Hospital a letter.

---

[3]The Court notes that Plaintiff was scheduled to work two shifts after August 19 but failed to appear for either shift.

13

This letter, dated September 29, 2004, claimed that Plaintiff was terminated in August, that the Hospital "never investigated [Plaintiff's] complaint or returned her to the schedule, despite being in possession of the complaint for approximately one month," and requested "compensation to remedy the financial, professional and emotional harm the [H]ospital's conduct has caused" Plaintiff. (Reilly Dep. Ex. 9.)

This uncontested evidence shows that the Hospital was willing to meet with Plaintiff and discuss her complaints. It also demonstrates that even if Plaintiff was not terminated on August 19, she reasonably believed and acted as if she had been terminated on August 19. Plaintiff's argument that the Hospital's failure to put her back on the schedule after her August 27 complaint constitutes retaliation is unsupported by the undisputed facts in this case.

Since Plaintiff has failed to produce evidence from which a reasonable jury could conclude that she suffered an adverse employment action that was causally related to a statutorily protected activity, she has failed to establish a prima facie case of retaliation. Defendant's Motion for Summary Judgment is granted as to this claim. Additionally, Plaintiff's Motion for Partial Summary Judgment on her retaliation claim is hereby denied.

**IV. Section 1983 Claims**

Finally, Plaintiff claims that the actions of the Hospital and Defendant Brown violated her First Amendment and equal protection rights under the Fourteenth Amendment of the Constitution by

14

discriminating against Plaintiff because of her religion.[4] Plaintiff brought this action pursuant to 42 U.S.C. § 1983 to enforce these rights. "When section 1983 is used as a parallel remedy for [a] violation . . . of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005). Consequently, Plaintiff's § 1983 claims against the Hospital fail for the same reason Plaintiff's Title VII disparate treatment claim failed—Plaintiff's failure to establish a prima facie case of discrimination. Additionally, since there was no constitutional violation in this case, Defendant Brown is entitled to summary judgment on her claim for qualified immunity.[5] *See Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks and citations omitted). Defendants' motions for summary judgment are therefore granted as to Plaintiff's § 1983 claims.

## CONCLUSION

Defendants' motions for summary judgment (Docs. 54, 56) are granted as to all of Plaintiff's claims. Plaintiff's Motion for Partial Summary Judgment (Doc. 60) is consequently denied.

---

[4] Plaintiff has not argued or pled that her First Amendment free exercise of religion was affected in any way. Consequently, the Court has treated Plaintiff's claim for a violation of the First Amendment as only a claim for religious discrimination.

[5] The Court assumes (without finding) that Defendant Brown is a government official.

15

IT IS SO ORDERED, this 27th day of June, 2007.

                                                S/Clay D. Land
                                                        CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE